was delivered at New York in a damaged condition, that is, that such as was delivered was damaged, is not supported by any evidence. The only question is as to whether any loss of wine is shown for which the ship is responsible. The casks were, all of them, delivered by the ship. The ship had no knowledge or information as to the quantity of the contents of the casks when they were laden, nor is there any evidence as to such quantity. A bill of lading for so many casks of wine by no means implies that the casks are full of wine. Part of the casks were wholly empty when unladen. But there is nothing to show that those particular casks may not have been wholly empty when laden. Part of the casks were partly empty when unladen. But there is nothing to show that those particular casks may not have been partly empty when laden. The evidence is, that the casks were in bad order when unladen; that most of them required coopering; that a portion of them were leaking in the vessel; and that the wine which had so leaked out was running over the between decks.

Under the bills of lading the ship is not responsible for "average leakage." There is no evidence in this case that the leakage was greater than average leakage. Such a clause in the bill of lading does not cover leakage from negligence in the vessel. in the stowing or handling of the casks. But it is for the shipper who resists payment of the freight to show such negligence. Dedekam v. Vose [Case No. 3,729]; The David & Caroline [Id. 3,593]; The Delhi [Id. 3,770]. The statement in the bill of lading, that the casks were "in good order and well conditioned," extends only to their apparent external condition, excluding any implication as to their intrinsic soundness and sufficiency. Clark v. Barnwell, 12 How. [53 U. S.] 272. 283; The Columbo [Case No. 3,040]; The Olbers [Id. 10,477]. It is therefore open to the vessel to show the defectiveness of the casks. The evidence is that the casks were "inferior" casks and "shaky" casks. This would seem to be sufficient to account for the leakage. But, on the ground that, under these bills of lading, negligence on the part of the vessel must be affirmatively shown by the owners of the wine, in order to resist successfully the claim by the vessel for the freight money, and that such negligence has not been shown, I direct a decree for the libellants for $866.25 gold, with interest and costs.

## Case No. 16,901.

VAUGHAN v. SOUTH & NORTH ALABAMA R. CO.

[Cited in Sayles v. Richmond, F. & P. R. Co., Case No. 12,424. Nowhere reported; opinion not now accessible.]

## Case No. 16,902.

VAUGHAN v. WALLACE.

[Cited in Sayles v. Richmond, F. & P. R. Co., Case No. 12,424. Nowhere reported; opinion not now accessible.]

## Case No. 16,903.

VAUGHAN v. WILLIAMS.

[3 McLean, 530; 3 West. Law J. 65; 8 Law Rep. 375.] [1]

Circuit Court, D. Indiana. May Term, 1845.

CONSTITUTIONAL LAW—ORDINANCE OF 1787—FUGITIVE SLAVES—RESCUE—FORFEITURE OF PROPERTY IN SLAVES.

1. The provision in the constitution of the United States. and in the act of congress of 1793 [1 Stat. 302]. in regard to the surrender of a fugitive from labor. is binding on the state of Indiana, and its citizens, the same as on the other states.

2. A repugnancy between the compact in the ordinance of 1787, and the constitution. necessarily repeals the ordinance.

3. Indiana, by coming into the Union under the constitution, consents to this, and the other party to the compact consents by receiving the state into the Union. This is the common consent required by the ordinance to annul it in part or wholly.

4. Full effect must be given to the constitution and law of congress.

5. The laws of Missouri sanctioning slavery must be respected, and rights under them enforced.

6. Courts are not to discuss slavery in the abstract, or the policy of slave laws.

7. An individual is liable to the penalty for a rescue, if he be present and encourage it.

[Cited in Weimer v. Sloane, Case No. 17,363.]

8. It is not necessary that he should put forth his hand to do the act.

[Cited in Weimer v. Sloane, Case No. 17,363.]

9. An owner of slaves, who takes them to the state of Illinois, and keeps them at labor six months, and then removes them to Missouri, forfeits his right to them as slaves.

[Cited in Anderson v. Poindexter, 6 Ohio St. 629.]

At law.

O. H. Smith and Mr. Wick, for plaintiff.

Quarles. Stevens & Bradley, for defendant.

McLEAN, Circuit Justice. The plaintiff, a citizen of Missouri, brought his action against the defendant, for rescuing from his possession certain slaves of the plaintiff, and fugitives from his service, whom he found and arrested in the state of Indiana. The defendant demurred to the declaration. As the principal ground of the demurrer it was insisted, that the fourth article of the constitution of the United States. in regard to the delivery of fugitives from labor. and the act of congress on the same subject, do not apply where the claim is made by a citizen of a new state, not within the territorial limits of the Union at the adoption of the constitution. And that a citizen of Indiana is not bound by such provisions. That the sixth article of the ordinance of 1787, which remains in full force in Indiana, requires a fugitive from labor to be delivered up only when "claimed in any one of the original states." And that as the alleged slaves es-

[1] [Reported by Hon. John McLean, Circuit Justice. 8 Law Rep. 375, contains only a partial report.]